**Ricky GOOCH, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.**

**No. 4:96CV01327 LOD.**

United States District Court, E.D. Missouri, Eastern Division.

June 10, 1997.

tiffs have had ample time to cure any defects in their complaint arising from that dismissal. Furthermore, this case is set for trial on February 12, 1997. Amending the complaint at this juncture would prejudice the defendant. Consequently, the Court will not allow amendment of the complaint.

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Dewey L. Crepeau, Columbia, MO, for plaintiff.

Maria C. Sanchez, Office of U.S. Attorney, St. Louis, MO, for defendant.

### ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE

DAVIS, United States Magistrate Judge.

This case is before the Court on the cross motions of the parties for summary judgment

pursuant to Rule 56, Federal Rules of Civil Procedure. Plaintiff has also filed a motion to remand which is opposed by defendant. This matter is before the undersigned United States Magistrate Judge by consent of the parties pursuant to 28 U.S.C. § 636(c).

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.* (Tr. 33–35, 72–74) Plaintiff alleged that he was disabled due to bladder and bowel problems. (Tr. 89)

Plaintiff's applications were denied initially and on reconsideration. (Tr. 27–32, 41–44, 55–59) On May 5, 1995, there was a hearing before an Administrative Law Judge (ALJ) on plaintiff's applications. (Tr. 150–164) On May 18, 1995, the ALJ rendered a decision in which he found that plaintiff was not under a disability as defined in the Act at any time through the date of the decision. (Tr. 7–18) Subsequently, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 2–3) The decision of the ALJ is therefore the Secretary's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

## MEDICAL EVIDENCE

The medical evidence shows that on June 20, 1983 a note from Dr. Jessie Arjona stated that plaintiff was 23 years old and sought an identification card from the Army so that he could receive medical privileges as a dependent son. (Tr. 117) The doctor noted that plaintiff was born with meningomyelocele,[2] for which he was operated on at birth. (Tr. 117) At the time of the note, plaintiff had a neurogenic bladder and bowel, total, secondary to meningomyelocele. (Tr. 117) On September 14, 1993, a voiding cystourethrogram showed that plaintiff's bladder was well rounded with no evidence of reflux. (Tr. 113) Moderate residual was noted within the bladder. (Tr. 113)

On October 29, 1993, plaintiff was examined by Dr. A.M. Hooshmand, a neurologist. (Tr. 124) In his report, the doctor noted that plaintiff was born with meningomyelocele, for which he had had surgery. (Tr. 124) Plaintiff was being treated by a urologist, and he wore an external catheter due to urinary incontinence. (Tr. 124) Plaintiff also occasionally suffered from fecal incontinence. (Tr. 124)

Plaintiff reported that he worked up to six months ago, when he lost his job "due to some type of automation." (Tr. 124) Plaintiff finished high school via special education but does not have any behavioral problem. (Tr. 124) He spends his time doing chores around the house, hunting, and fishing. (Tr. 124) Plaintiff has trouble with his memory regarding intermediate events, he is able to do simple math, and his thought processes are slow. (Tr. 125) Plaintiff was diagnosed as having status post repair of meningomyelocele of the sacral area with incontinence and mild mental retardation. (Tr. 125)

On November 7, 1993, Dr. H.R. Berger, a licensed psychologist, performed a mental examination of plaintiff. (Tr. 118–122) Plaintiff reported that he started working for Filter Tech in Rolla, Missouri in 1984, and then again beginning on December 23, 1992. (Tr. 119) He subsequently was laid off because work was slow and he was replaced by a machine. (Tr. 119) He then worked in construction for two years as a laborer but was replaced. (Tr. 119) He worked for a nursery for a year and a half performing seasonal work pulling up trees and he is now unemployed. (Tr. 119)

Plaintiff also reported that he was incontinent of bowel and urine and that he was not currently taking any medication. (Tr. 119) Plaintiff's mental status was grossly intact, although he was not completely oriented. (Tr. 119) Plaintiff had considerable attention problems and could not perform certain memory exercises. (Tr. 119) Plaintiff could follow commands and read and obey instructions. (Tr. 120) Plaintiff showed a moderate degree of cognitive inefficiency, inflexibility, and dissonance. (Tr. 120)

---

**2.** Meningomyelocele is a protrusion of the spinal cord and its membranes through a defect in the vertebral column. Stedman's Medical Dictionary (26 ed.1995).

Plaintiff also stated that he prepares his own meals, visits with friends, hunts, and fishes. (Tr. 120) After testing plaintiff, Dr. Berger found plaintiff's I.Q. scores to be within the borderline intellectual range. (Tr. 120) Dr. Berger found that plaintiff has relative strength in verbal comprehension, non-verbal abstracting, problem solving, concept formation, visual analysis, and simple assembly. (Tr. 120–21) He further noted that plaintiff has an almost absolute weakness in attending and a relative weakness in task persistence and energy level. (Tr. 121) Plaintiff finds it difficult to learn new non-verbal process when that process is simple, repetitive, and rote in nature. (Tr. 121)

Dr. Berger concluded that plaintiff met the criteria for attention deficit hyperactivity disorder, residual phase. (Tr. 121) His premorbid level of intellectual functioning was within the dull-normal intellectual range, with some potential for higher level intellectual functioning. (Tr. 121) Plaintiff's relatively strong verbal comprehension, non-verbal abstraction, visual analysis, and simple assembly skills are areas in which he would be aided in a work environment. (Tr. 121)

Dr. Berger concluded by finding that plaintiff had a moderate degree of cognitive dissonance and inefficiency. (Tr. 122) He also found that these cognitive deficiencies do not appear to impact on his ability to perform basic tasks and make decisions required for daily living. (Tr. 122) Plaintiff needs a work environment that caters to and makes adjustment for his incontinence. (Tr. 122)

On September 22, 1994, Dr. Timothy Crain, a urologist, wrote in a letter that plaintiff was his patient. (Tr. 129) Dr. Crain stated that plaintiff has a neurogenic bladder, which results in his inability to store urine in his bladder. (Tr. 129) Therefore, plaintiff constantly leaks urine, which requires him to use an external catheter. (Tr. 129) This condition makes it difficult for plaintiff to perform manual labor. (Tr. 129) Dr. Crain was attempting to arrange for the placement of an artificial ureteral sphincter, which could help with his storage of urine and increase his ability to work. (Tr. 129)

On April 20, 1995, Dr. Robert Allen performed surgery on plaintiff and placed an artificial urinary sphincter around the bladder neck. (Tr. 131) In the operation report, Dr. Allen noted that plaintiff previously had difficulty with his bowel function but that after he was placed in a bowel program at the clinic, plaintiff became continent of stool. (Tr. 131)

### HEARING TESTIMONY

On May 5, 1995, plaintiff had a hearing before an ALJ. (Tr. 150–164) Plaintiff testified at the hearing that he was born in 1959 and that he completed the twelfth grade of special education. (Tr. 151) Plaintiff stated that he washed air filters for heavy equipment until December of 1992, when he was replaced by a machine. (Tr. 152) He worked as a part-time mechanic for two to three months in 1994. (Tr. 153–54)

Plaintiff further testified that he had worn an external urine bag his whole life but that he had recently had surgery which hopefully would eliminate the need for it. (Tr. 154–56) His external bag limited his ability to work because of leakage. (Tr. 156) As long as he is careful and does not bump the bag into anything, he does not have much trouble with leakage. (Tr. 159) The bag must be emptied about once an hour, and it takes about five to ten minutes to empty it. (Tr. 157, 160)

Plaintiff stated that he would be able to perform a desk job that involved sitting six out of eight hours with occasional walking and no lifting of more than five pounds, as long as it did not involve paperwork. (Tr. 157–58) His condition also would not have prevented him from performing an assembly-type job, as long as he was careful and did not bump into his urine bag. (Tr. 158–60) Plaintiff also testified that he has a little trouble with his bowels but that it does not prevent him from working. (Tr. 163)

### ALJ'S DETERMINATION

The ALJ found that plaintiff met the disability insured status requirements of the Act on December 23, 1992, the date he stated he became unable to work, and continued to meet them through December 31, 1997. (Tr. 13) The ALJ found that plaintiff has not engaged in substantial gainful activity since

December 1992. (Tr. 13) The ALJ also found that the medical evidence established that plaintiff has a neurogenic bowel and bladder, borderline intellectual functioning, and residuals of an attention deficit hyperactivity disorder, but that he does not have an impairment or combination of impairments listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13)

Additionally, the ALJ found that plaintiff's complaints of disabling incontinence were not credible. (Tr. 13) The ALJ also found that plaintiff has the residual functional capacity to perform the requirements of work, except for lifting more than fifty pounds, and that he is non-exertionally restricted to simple repetitive work, performed in close proximity to a rest room, which is not performed in close proximity to others. (Tr. 13)

The ALJ further found that plaintiff is able to perform his past relevant work, and even if he cannot, plaintiff can perform sedentary jobs that accommodate his non-exertional limitations. (Tr. 13) The ALJ then concluded that plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 13)

### ADDITIONAL EVIDENCE

Attached to plaintiff's motion to remand was additional medical evidence that did not exist prior to the ALJ's decision. This evidence includes a summary of an ileoaugmentation cystoplasty operation performed on plaintiff. This summary states that plaintiff underwent implantation of an artificial urinary sphincter around the bladder on April 20, 1995 and that since then he has been dry. Plaintiff, however, must empty his bladder every two hours or he becomes wet. Similarly, another report notes that since the implantation of the artificial sphincter, plaintiff remains mostly dry except when he has a very full bladder.

Plaintiff has also submitted treatment notes from Dr. Allen which indicate that plaintiff is doing well post-operatively. The notes further state that plaintiff's kidney is able to void without leakage.

### DISCUSSION

Plaintiff alleges in his motion for summary judgment that the ALJ erred in failing to obtain the testimony of a vocational expert because plaintiff cannot return to his former work. Plaintiff also argues that his non-exertional limitation of wearing a catheter bag precludes him from performing the full range of sedentary work, and thus a vocational expert is needed to determine if there are any jobs he can perform despite his impairments. In his reply brief, plaintiff concedes that the evidence attached to his motion to remand indicates that his condition may have improved. Plaintiff argues, however, that even if his condition has improved to the point that he is no longer considered under the Act, he is still entitled to a closed period of disability.

The undersigned finds that the ALJ's determination that plaintiff is not disabled is supported by substantial evidence in the record as a whole.

■ The Secretary's decision as to a claimant's disability status is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence which a reasonable person might accept as adequate to support the decision. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). That determination should be reversed only if "a reasonable fact finder would have to conclude otherwise." *Warren v. Shalala,* 29 F.3d 1287, 1290 (8th Cir.1994).

Plaintiff first argues in his motion for summary judgment that the ALJ erred in failing to obtain the testimony of a vocational expert because plaintiff cannot return to his former work. Plaintiff notes that it is uncontested that he was replaced by a machine and that his previous work no longer exists. Thus, plaintiff argues there is not substantial evidence in the record to support the ALJ's finding that plaintiff can perform his former work.

Plaintiff is mistaken. An individual is not disabled if his residual functional capacity and vocational abilities make it possible for him to work but he remains unemployed due to technological changes in the industry in

which he worked. 20 C.F.R. § 404.1566(c)(4) (1988).

■ The ALJ found that based on plaintiff's residual functional capacity he could perform his past relevant work as a heavy equipment filter washer. It is uncontested that plaintiff lost his prior job due to automation and not due to his disability. Therefore, under § 404.1566(c), the fact that plaintiff became unemployed due to "technological changes" does not mean he is disabled and unable to perform his prior work, as his residual functional capacity and vocational abilities make it possible for him to work.

■ Furthermore, plaintiff did not lose his job because of his disability. In fact, as the ALJ correctly found, plaintiff was able to perform his past job for a number of years despite his impairments. It was proper for the ALJ to rely on this fact in finding that plaintiff was not disabled. *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992); *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir. 1990).

■ Lastly, the ALJ made an alternative finding that even if plaintiff could not perform his past relevant work because of exertional restrictions to sedentary work, he could still perform sedentary jobs which accommodate his non-exertional limitations. (Tr. 12) Plaintiff's work history which includes some evidence of him working after he lost his filter cleaning job, along with his testimony concerning his daily activities and that he would be able to perform a desk job that involves sitting six out of eight hours with occasional walking and no lifting of more than five pounds as long as it did not involve paperwork and/or an assembly-type job as long as he was careful and did not bump into his urine bag, support the ALJ's finding that plaintiff could perform sedentary work.

Plaintiff also argues that his non-exertional limitation of wearing a catheter bag precludes him from performing the full range of sedentary work, and thus a vocational expert is needed to determine if there are any jobs plaintiff can perform despite his impairments. As detailed above, plaintiff's non-exertional limitations do not preclude him from performing the full range of sedentary work.

■ Furthermore, the testimony of a vocational expert is only needed if and after the burden shifts to the Secretary. *Barrett v. Shalala,* 38 F.3d 1019, 1024 (8th Cir.1994). As also shown above, plaintiff never carried his initial burden of showing that he was unable to perform his past relevant work. Thus, there was no need for the testimony of a vocational expert. *Barrett, supra.*

In his reply brief, plaintiff attacks defendant's argument that plaintiff's daily activities indicate that he is not disabled. Plaintiff cites to the case *Eback v. Chater,* 94 F.3d 410 (8th Cir.1996). That case held that the Secretary improperly relied on the claimant's daily activities because those activities did not establish that the claimant could perform full-time work in the national economy. *Id.* at 413.

In *Eback,* however, the claimant performed many of her daily activities in conjunction with her husband. *Id.* Here, plaintiff lives alone. Moreover, the ALJ relied on the evidence of plaintiff's activities to support a finding that his recent sphincter operation reduced the severity of his incontinence. Finally, regardless of the extent of plaintiff's daily activities, as detailed previously, there is substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled.

■ Lastly, the additional medical evidence offered by plaintiff in support of his motion to remand relate to a time frame after the date of the ALJ's decision. Thus, the medical evidence is not "material" as required for a remand under 42 U.S.C. § 405(g). *Goad v. Shalala,* 7 F.3d 1397, 1398 (8th Cir.1993); *Thomas v. Sullivan,* 928 F.2d 255, 260–61 (8th Cir.1991).

■ Furthermore, this evidence shows that plaintiff's condition has improved since his surgery in April of 1995. Since there is substantial evidence in the record as a whole showing that plaintiff is not disabled, additional "new" evidence which shows that his non-disabling impairment of incontinence has

improved can clearly not be a basis for remanding the case under § 405(g).

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is **denied.**

**IT IS FURTHER ORDERED** that plaintiff's motion to remand is **denied.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **granted.**