**John W. RAUTIO, Appellant,**

**v.**

**Otis R. BOWEN, Secretary of United States Department of Health and Human Services, Appellee.**

No. 88–5071.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1988.

Decided Nov. 30, 1988.

William L. Orr, Minneapolis, Minn., for appellant.

Michael C. Messer, Chicago, Ill., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

This is John W. Rautio's third application for social security disability benefits. The Administrative Law Judge (ALJ) denied his claim, and upon the magistrate's[1] report and recommendation, the district court[2] granted summary judgment for the Secretary of Health and Human Services. We affirm.

Rautio filed for disability benefits under sections 216(i) and 223 of the Social Security Act on February 20, 1985, alleging a lower back injury and pain that rendered him unable to work on February 2, 1978. On February 21, 1986, the ALJ made a finding that Rautio was not disabled and refused to reopen Rautio's earlier applica-tions (dated March 18, 1980, and September 17, 1981) because no new and material evidence had been presented. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied review on August 25, 1986.

Rautio is a 50 year old male who quit high school during his ninth grade year. His intellectual functioning falls within the low average range. He was steadily employed during most of his working life— spending 13 years as a maintenance mechanic in a machine shop. It was here that he allegedly became disabled in February of 1978 while lifting a driving mechanism (weighing 70 pounds) out of a pole winding machine. He felt a tear type sensation over his left palalumbar area as he was twisting—resulting in a severe back injury. Rautio saw the company doctor the next day and was advised to take bed rest and heat for at least a week.

Rautio's injury was then diagnosed by Dr. David Olson as a lumbar sprain and degenerative disc disease, lumbar spine L5–S1. Rautio was unable to continue working due to left lower back pain and pain in both legs intermittently.

In February of 1980, Dr. Charles Ray reported that a CT scan revealed bilateral stenosis at L5–S1. Rautio is 5'7" and weighs 230–240 pounds. He lost 60 pounds per doctor's orders before a laminectomy at L–5 could be performed on October 21, 1980. The discharge diagnosis listed: (1) lumbar degenerative disc disease; (2) post traumatic thoracolumbar musculoligamentous strain; (3) bilateral lateral stenosis L5–S1 right greater than left; (4) Cephalgia possibly secondary to tension (5) obesity; and (6) depression.

Rautio also had emotional problems resulting in a suicide attempt in 1980. He was examined by Dr. Louis Flynn, a psychiatrist in January 1982. Dr. Flynn concluded that Rautio had a hysterical reaction to his problem and believed that Rautio's illness was very much influenced by his psychological approach to the problem.

---

1. The Honorable Floyd E. Boline, United States Magistrate for the District of Minnesota.

2. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

A month later Rautio saw Dr. Robert Wengler, an orthopedic surgeon, who found him to be currently temporarily totally disabled. Upon subsequent examinations and in June 1982, Dr. Wengler stated that Rautio could return to work and lift up to 10 pounds. He suggested that Rautio avoid repetitive bending, stooping or heavy pushing and felt Rautio had only a 30 percent impairment of function of the spine.

In March 1983 Rautio underwent a chemonucleolysis (injection of the drug chymopapain). In finding that Rautio was not permanently and totally disabled, Dr. Wengler encouraged Rautio to return to work but be allowed to change positions.

In July 1984 Rautio was examined by Dr. Ted Ciriaoy, who recommended a physical therapy program. That same year, Rautio attended a regional vocational school but completed only two months of the course as he could not tolerate sitting for more than one hour at a time.

Rautio returned to Dr. Wengler in January 1985, who encouraged him to return to school and "try to tough it out" as he doubted social security benefits would be granted.

A year later Rautio began treatment with his current physician, family practitioner Dr. Charles McGraw. Rautio complained of severe sharp pains radiating down his left leg and into his toes. Dr. McGraw noted that Rautio had an ongoing disability of 30–35 percent since approximately 1980, with a poor prognosis for complete recovery.

At the hearing before the ALJ, Rautio testified that he can sleep for only a few hours at a time before he is stirred by back pain. He can lift up to five pounds and can be on his feet for only one hour at a time. He noted that his condition has worsened over the years as he is unable to drive or sit for a lengthy period. He admitted emotional problems and also mentioned that he often has an upset stomach from medication.

Other testimony included that of his fiancee, Rosemary Parson, who met Rautio in a bar in October 1983, and has lived with him since September 1984. She related that Rautio's daily activity includes considerable attention to television. He hobbles and limps and is often very aggravated. He is unable to do housework, put a leash on the dog, or reach in a cabinet for a coffee cup.

To assess Rautio's vocational capacity, vocational-expert Dr. Eugene Bradfield was retained to testify at the hearing. The ALJ posed a hypothetical question to Bradfield which required him to suggest available employment for an individual with Rautio's age, education, work experience, and medical findings. Dr. Bradfield responded that Rautio's work skills as a maintenance mechanic could transfer to a position of a quality control inspector in a variety of production industries or a hand-tool repairer. Several hundred of these jobs exist in the Minnesota economy according to Dr. Bradfield. Dr. Bradfield also stated that Rautio could perform other unskilled jobs such as those of a ticket taker or cashier. Note: At the time of the hearing Rautio was 48 years of age and properly classified as a "younger worker."

The ALJ entered a finding that Rautio was not disabled for a period of 12 continuous months and that he retained capacity to perform work which exists in significant number.

Judicial review of disability determinations is limited to assessing whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g) (Supp. III 1985); *Bogard v. Heckler*, 763 F.2d 361, 362–63 (8th Cir. 1985). This review requires more than a search for the existence of substantial evidence supporting the Secretary's decision, but rather must take into account evidence which fairly detracts from its weight. *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir. 1987). "[Q]uestions of fact, including the credibility of a claimant's subjective testimony, are primarily for the Secretary to decide, not the courts." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

 "Substantial evidence" to support a finding of nondisability means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.

Where the evidence as a whole can support either outcome, the Secretary's decision must be affirmed. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir.1984).

Rautio asserts that the ALJ erroneously discredited his subjective complaints of severe, intractable, disabling pain by failing to properly apply the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320 (order), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

Polaski provides:

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency, and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

■ Before a claimant's subjective allegations of pain may be discounted, "the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead the ALJ to reject the claimant's complaints of pain." *Brock v. Secretary of HHS*, 791 F.2d 112, 114 (8th Cir.1986). Although the ALJ may disbelieve a claimant's allegations, credibility de-

terminations must be supported by substantial evidence. *See Hardin v. Heckler*, 795 F.2d 674, 676 (8th Cir.1986).

■ As to the degree to which the objective medical evidence supported the subjective complaints, the ALJ found that the objective signs did not measure up to the severity of Rautio's allegations. He noted that recent years involved only "flare-ups" of pain and that there was no consistent discomfort. Rautio was conservatively treated with Tylenol. The ALJ stated that no doctor had found Rautio to be severely impaired or disabled. Doctors Olson and Wengler concluded that Rautio could still work. Treating physicians' opinions may be entitled to great weight if supported by the evidence of record. *See Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir.1987).

The ALJ determined that Rautio did not seek frequent medical attention and had had only sporadic medical visits as of late. A failure to seek aggressive treatment is not suggestive of disabling back pain. *See Benskin v. Bowen, supra* at 884. The ALJ also mentioned that Rautio had had no mental problems for three and one-half years.

The ALJ stated that Rautio's behavior "strained credulity." Rautio had grimacing expressions and alleged use of a cane, yet the medical reports said nothing of a cane. One physician, Dr. John F. Kessel, noted Rautio's inconsistent responses and failure to cooperate during examinations. The ALJ further mentioned the inconsistency wherein Rautio claimed to be essentially housebound, yet met and became acquainted with his fiancee in 1983 and 1984.

Although the record could be read to support a continuing search for relief from pain, there is no evidence of an objective medical impairment. Rautio's physicians felt that he had the capacity to lift up to ten pounds in an occupational setting where he would be afforded the opportunity to sit, stand, and move about as required to relieve pain. Rautio's limited use of prescription medications was also identified by the ALJ as a specific piece of contradictory or inconsistent evidence. The ALJ

considered the contribution from any mental impairment but found no continuing element of depression. Rautio's complaints are not corroborated by the evidence and the ALJ properly determined that they do not survive application of the *Polaski* standards for evaluating pain.

 The ALJ also discounted the testimony of Miss Parson, as she lives with Rautio and has a financial interest in the case. He noted that Parson had only recently become acquainted with Rautio and was thus unable to contrast Rautio's present to past behavior. *Smith v. Heckler*, 735 F.2d 312 (8th Cir.1984) directs consideration of testimony of family members but certainly does not mandate belief of such testimony as credible. The ALJ properly considered Miss Parson's testimony.

The ALJ found that Rautio had met his burden of proving that he was unable to return to his past work and therefore correctly shifted the burden of proof to the Secretary to show that the claimant can do some other work in the national economy. *McMillian v. Schweiker*, 697 F.2d 215, 220–21 (8th Cir.1983).

Rautio challenges that the ALJ's hypothetical question rejected facts which were supported by the record. Thus, Rautio argues that because the ALJ failed to include all of Rautio's impairments in the final hypothetical question posed to the vocational expert, the expert's response does not constitute substantial evidence.

 Although the hypothetical question "must precisely set out all of the claimant's impairments," *O'Leary v. Schweiker*, 710 F.2d 1334, 1343 (8th Cir.1983), the hypothetical question is sufficient if it sets forth the impairments which the ALJ accepts as true. *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir.1985); *Baugus v. Secretary of HHS*, 717 F.2d 443, 447 n. 5 (8th Cir.1983).

Having concluded that the ALJ properly considered Rautio's subjective complaints of pain, the hypothetical question was appropriate in light of the credibility determination made by the ALJ. *See Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir.1986).

In our opinion, substantial evidence in the record as a whole is inconsistent with Rautio's allegations of constant, disabling pain. There was a sufficient basis on which to discount his subjective complaints, and once those complaints are discounted, there is substantial medical evidence in the record to support the Secretary's conclusion that Rautio is not disabled. Therefore, because the evidence was properly evaluated, we affirm the judgment of the district court.