**Joe F. BARRETT, Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellee.**

No. 94–1208.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1994.

Decided Oct. 27, 1994.

Lawrence E. Ray, St. Robert, MO, argued, for appellant.

Eric Tolen, Asst. U.S. Atty., St. Louis, MO, argued (Wesley Wedemeyer, Asst. U.S. Atty., on the brief), for appellee.

Before McMILLIAN and MAGILL, Circuit Judges, and BOGUE,[*] Senior District Judge.

MAGILL, Circuit Judge.

Joe F. Barrett appeals from the district court[1] order granting summary judgment in favor of the Secretary of Health and Human Services in an action brought by Barrett challenging the Secretary's denial of disability benefits under 42 U.S.C. § 401 and §§ 1381–1383 (1993). The Secretary based the denial on findings that Barrett had no severe impairment and was capable of returning to his past relevant work. We affirm.

## I. BACKGROUND

Barrett applied for disability benefits on April 15, 1991, alleging that he had been disabled since December 22, 1990, because of back pain and migraine headaches. The Secretary denied Barrett's application and, on November 29, 1991, an administrative law judge (ALJ) denied Barrett's claim following a hearing. The appeals council denied Barrett's request for review and Barrett then sought review in the district court pursuant to 42 U.S.C. § 405(g) (1993). The court referred the matter to the United States magistrate judge, who filed a report recommending that the Secretary's motion for summary judgment be granted and that Barrett's motion for summary judgment be denied. On October 29, 1993, the district court entered an order adopting the magistrate judge's report and recommendation and granting the Secretary's motion.

Barrett was fifty-two years old at the time of the hearing, and had an eighth grade

---

[*] THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri.

education. He worked as a truck driver for more than twenty years. His last two jobs before he applied for disability were with Ryder Rental, which required no loading or unloading, and a part-time job driving a dump truck. Barrett lost the job with Ryder when Ryder lost its contract, and quit the dump-truck driving job because of back and head pain. Thereafter, he applied for and received unemployment benefits of $150 per week.

At the hearing before the ALJ, Barrett testified that he had had back problems since the 1970s, and had constant severe back pain for which he took pain pills. The pills sometimes made him feel "drugged up." He stated that for the previous six months, he had had migraine headaches two to three times a week, and that the only way he could relieve the headaches was to lie down. Barrett claimed that he could only stand for ten to fifteen minutes, sit for thirty to sixty minutes, and walk fifteen to twenty-five steps. He spent his days watching television or in bed, and had to give up yard work and his hobbies of fishing and hunting because of the back pain. He testified that once or twice a week, he would drive four miles into town, and, once every week or two, twelve miles to visit his mother.

. Barrett had been hospitalized three times for treatment of back pain: in April 1979, when he was diagnosed as having acute lumbosacral strain and acute left sciatic neuritis; in September 1981, when he was diagnosed with scoliosis of the axial spine with levorotoscoliosis of the lumbar spine, spasms in the lumbar area, joint space narrowing and progressive degenerative osteophytic lipping of the anterior vertebral bodies of the lumbar spine; and in July 1982, when he was diagnosed as having an acute low back strain. He was also treated by Robert S. Myers, D.O., whom he saw three times after the alleged onset date of December 22, 1990. The doctor prescribed muscle relaxants and pain medication [2] and a back treatment on a traction table, but did not refer Barrett for physical therapy or additional evaluation or testing. He submitted disability claim forms for Barrett indicating that Barrett had been disabled since April 1991 due to low back pain and migraine headaches, but did not provide a specific residual functional capacity assessment.

When Barrett was examined by Dr. Allen Northern at the request of the state agency in May 1991, the doctor reported restricted back motion, degenerative joint disease and sacroiliac strain; X-rays indicated rotoscoliosis and disc space narrowing, and the radiologist recommended a CT scan.

The ALJ found that the medical evidence established that Barrett had scoliosis of the dorsal spine and a history of migraines, but that he did not have an impairment or combination of impairments listed in or equal medically to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ further found that Barrett's claims of incapacitating pain were not credible.

The ALJ concluded that Barrett was precluded from strenuous work activities and could not perform work that involved lifting more than twenty pounds, but had no limitation on performing light work, including his past relevant activity such as the job with Ryder.

## II. DISCUSSION

 We must affirm if substantial evidence on the record as a whole supports the Secretary's decision. *Russell v. Sullivan,* 950 F.2d 542, 544 (8th Cir.1991). We must consider evidence that detracts from the decision as well as evidence that supports it, but may not reverse the decision "merely because substantial evidence would have supported an opposite decision." *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993) (quoting *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). Although the ALJ may not reject subjective complaints solely because of a lack of objective medical evidence on the record as a whole, the absence of objective medical evidence which supports the degree of severity is a factor to be considered by the ALJ. *Beeler v. Bowen,* 833 F.2d 124, 127 (8th Cir.1987); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted).

**2.** Ibuprofen, Riopan, Anatomotor, OTM, Diaulud, Parafon Forte, RTC PRN, Anoquan, and Soma.

We find that the Secretary's decision is supported by substantial evidence on the record as a whole. Barrett's first argument, that the ALJ relied on isolated remarks in the medical reports, is not supported by the record. The ALJ considered and discussed in his decision the medical reports submitted by Barrett, the diagnoses of Barrett's back complaints, treatments prescribed for Barrett, Barrett's hospitalizations, and Barrett's subjective claims of pain. He also considered Dr. Myers' opinion that Barrett had been disabled since April 1991. Although the opinion of the treating physician is to be accorded a high degree of deference by the ALJ, this deference should be limited if the treating physician's opinion consists only of conclusory statements. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991). The ALJ discussed Dr. Myers' opinion in his decision, rejecting it because, although Dr. Myers opined that Barrett had been disabled since April 1991, the doctor did not examine Barrett until June of that year; the doctor never ordered evaluation or testing of Barrett beyond his own examination; and he never ordered treatment beyond prescribing pain medication. This constitutes substantial evidence that Dr. Myers' opinion was conclusory.

Barrett next argues that the ALJ erred in failing to order the CT scan recommended by the state agency radiologist. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986). Barrett presented the ALJ with records detailing his past and present back problems, including diagnoses of scoliosis, degenerative joint disease, and limited range of motion. The ALJ accepted these diagnoses as accurate, and based his assessment of Barrett's disability on them. There was no conflict regarding the diagnoses of the back problems, and the records were sufficient for the ALJ to determine whether Barrett was disabled. The ALJ was therefore not required to order additional tests.

Barrett also argues that the ALJ failed to assess the credibility of his testimony and that of his wife. Subjective allegations of pain must not be disregarded solely because the objective medical evidence does not fully support them. *Polaski*, 739 F.2d at 1322. The absence of objective medical evidence supporting allegations of pain is one factor among several the ALJ is required to consider. *Id.* The additional factors are: claimant's prior work record; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Id.*

The ALJ specifically found that Barrett's claims of pain were not credible. In his decision, he examined each of the *Polaski* factors, and found that the inconsistencies in Barrett's testimony, and between that testimony and the medical records, indicated that the testimony was not credible. Among the inconsistencies cited by the ALJ were: that Barrett's work stoppage was caused by Ryder's loss of a work contract, and not by his medical problems; that Barrett collected unemployment insurance during the period of his claimed disability; that Barrett received only minimal conservative treatment; that he had not seen his doctor since June 1991, and had not required emergency room or hospital treatment during the period he claimed disability, nor had he required extensive evaluation or testing; that he never discussed the side effects of his medication with his doctor or asked for modification of the medication; that the doctor's progress notes did not indicate complaints of severe, frequent migraine headaches; that, despite his testimony as to the duration, frequency and intensity of his pain, he continued to drive a car; that the pain was precipitated and aggravated by activities requiring physical exertion; and that Barrett presented no evidence of impairment in cognitive functioning.

The ALJ thus considered the *Polaski* factors and came to the conclusion that Barrett's claims of subjective pain were not credible. In particular, "[a] failure to seek aggressive treatment is not suggestive of disabling back pain." *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The ALJ's

conclusion that the minimal treatment Barrett received was inconsistent with his claims of disabling pain is supported by the record. In addition, in order to be eligible for unemployment benefits, Barrett was required to sign documents stating that he was capable of working and seeking work. This statement is clearly inconsistent with Barrett's claim of disability during the same period. The ALJ assessed Barrett's credibility, and the resulting conclusion, that Barrett's claims lacked credibility, is supported by substantial evidence.

The ALJ did not make a finding as to the credibility of Barrett's wife. She, however, did not testify on the subject of Barrett's back pain itself, but only on the subject of what and how much medication he took. The ALJ gave no indication that he did not accept Mrs. Barrett's testimony as credible, and his decision was not inconsistent with her testimony.

 Finally, Barrett argues that the burden of proof should have been shifted to the Secretary, and that the ALJ erred in not obtaining the testimony of a vocational expert. We disagree. The burden of proof shifts to the Secretary only after the claimant has carried the initial burden of showing that he is unable to perform his past relevant work. *Conley*, 781 F.2d at 146. The testimony of a vocational expert is required only if and after the burden shifts to the Secretary. *Id.* The ALJ specifically found that Barrett was able to continue his past relevant work of truck driving, and, in that context, the burden never shifted to the Secretary and there was no requirement to obtain the testimony of a vocational expert.

## III. CONCLUSION

For the above reasons, we affirm the decision of the district court.