44 F.Supp.2d 1008 (1999)
Kimberly A. EITING, Plaintiff,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant.
No. 4:97CV2274 (SNL) (MLM).
United States District Court, E.D. Missouri, Eastern Division.
March 29, 1999.
*1009 *1010 *1011 *1012 Richard G. Heywood, Senniger and Powers, One Metropolitan Square, St. Louis, MO, Richard J. Eisen, Ziercher and Hocker, Clayton, MO, Kimberly A. Eiting, St. Charles, MO, for Kimberly A. Eiting, plaintiff.
Wesley D. Wedemeyer, Office of U.S. Attorney, St. Louis, MO, for Social Security Administration, Kenneth S. Apfel, defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This is an action under Title 42 U.S.C. § 405(g) for judicial review of defendant Kenneth S. Apfel's ("Defendant") final decision denying plaintiff Kimberly A. Eiting's ("Plaintiff") application for Social Security benefits under Title XVI of the Social Security Act. Both parties have moved for summary judgment [18, 21].

I.

PROCEDURAL HISTORY
On December 5, 1995, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (Tr. 58-59), alleging a disability beginning June 1, 1988, by reason of severe chronic back pain, spina bifida and arthritis. (Tr. 76, 84). The application was denied initially (Tr. 52-57) and upon reconsideration. (Tr. 44-49).
Plaintiff requested a hearing (Tr. 42) which was held on May 20, 1996, before Administrative Law Judge ("ALJ") Byron D. Mills. (Tr. 28-41). The ALJ determined on August 15, 1996, that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 13-21).
After Plaintiff requested further review, the Appeals Council denied review of the ALJ's determination. (Tr. 6-7). Thus, the decision of the ALJ stands as the final determination of the Commissioner.

II.

TESTIMONY BEFORE THE ALJ
Plaintiff testified before the ALJ on May 20, 1996. She stated that she lived in *1013 a trailer in St. Charles, Missouri, was thirty years old, was single and had three children, ages eleven, eight and six. (Tr. 31). She said she was not presently employed and was last employed in 1987 taking care of parking lots for Royal Walters Properties. (Tr. 31). Her job with Royal Walters required her to engage in maintenance, security and paperwork. She stopped working in 1987 because of her back problems. (Tr. 32).
Plaintiff informed the ALJ that, at the age of seventeen, she learned she had spina bifida and at that time started having problems with her back. (Tr. 32). Her back condition has progressively worsened since that time. She reported that, as of the time of the hearing, she can barely carry a purse. She feels like somebody is stabbing her. She also stated that during that last two years, she experienced episodes where she falls and her legs shake uncontrollably and she cannot feel them. She said her arms and legs go numb constantly. (Tr. 32). Plaintiff stated that she cannot sit for very long. It hurts to stand. She can stand with her weight shifted on one leg for only about five minutes but then she starts having pain. Her back condition bothers her when she walks and causes her to limp. The more she is required to walk, the more she limps and the worse her back pain gets. This then leads to her losing sensation in her legs altogether and she falls down. (Tr. 33).
Plaintiff stated that she attends the Winfield Family Health Care Center. (Tr. 33). The doctor there has not suggested surgery for Plaintiff because he believed surgery would "just cripple [her.]" The doctor told her that there was not much that could be done for her condition. (Tr. 34). Plaintiff stated that she sees her doctor about once a month. (Tr. 36). However, he usually just talks to her about her condition and does little more. (Tr. 37). The doctor tells Plaintiff to rest as much as possible, to try not to walk, and to think about what she is doing. (Tr. 37).
Plaintiff reported that none of the medications she takes helps her back condition. She said the pain medication only seems to work every three to four days and the relief lasts only for thirty to sixty minutes. (Tr. 33). She stated that she takes hot baths for her back. Although baths do not reduce her pain, they help calm her down and give her a chance to unwind. (Tr. 35).
Plaintiff testified that she does her own housework as best she can. Sometimes she has to pay for housecleaning services, even though her income is insufficient to cover her necessities and bills. She receives $342 from ADC, she receives $340 in food stamps and she receives no other support. (Tr. 34-35).
According to Plaintiff, some of her days are better than others. Her worst days are when she is laying on the ground and cannot feel her legs. (Tr. 35). Plaintiff stated she has not been able to drive since November 1995 because of the numbness in her legs. She reported that she was in a car accident in November and she and her doctor believed it would be better if she did not drive any longer. (Tr. 35).
Plaintiff described her daily routine. She stated that she wakes up at 6:30 in the morning and wakes her children up. She helps them dress and get ready for school. She then goes across the yard to talk to their grandmother. She eats breakfast, which she fixes herself. She makes sure the dogs are fed and gives them water. She then gets dressed. She goes to the grocery store once a week; her mother or sister gives her a ride to the store according to their schedules. She also watches television, reads books and crochets. At noon she eats lunch. She watches more television. She talks on the phone. She does the laundry and dishes. By the time the children arrive home at 4:00, she has supper on the table for them. They finish eating by 5:00 at which time the children do their homework and have baths. She reported that her children are involved in school activities and she attends their school functions when she can. (Tr. 38-39). *1014 Plaintiff stated she engages in no sports herself, she has very little social life, and she does not attend church. (Tr. 39-40).

III.

MEDICAL AND OTHER RECORDS BEFORE THE ALJ
On August 2, 1994, Plaintiff was admitted to St. Luke's Hospital Emergency Room complaining of neck pain. She said the pain radiated to her ears from the back of her neck. (Tr. 119). She underwent x-rays of her cervical spine which revealed a straightening of the normal lordotic curve. The intervertebral spaces were of average width and the intervertebral foramina were not remarkable. There was no evidence of fracture, dislocation, or bone destruction. (Tr. 121).
On December 15, 1994, Plaintiff underwent x-rays of her lumbar spine due to her history of severe low back pain. The x-rays revealed minimal degenerative changes of the facet joints. However, there was adequate preservation of the intervertebral spaces throughout the lumbar spine. No definite spondylolysis or spondylolisthesis was noted. (Tr. 117).
Plaintiff was seen at the Barnes St. Peters Hospital Emergency Room in St. Peters, Missouri on May 26, 1995, after she twisted and strained her back. She was examined and diagnosed with chronic low back pain. She was released with instructions to rest, take Flexeril and to alternate the application of ice and moist heat to her back. (Tr. 111).
On May 30, 1995, Plaintiff underwent x-rays of her lumbar spine as a result of her back pain. The x-rays revealed a mild narrowing of the L5-S1 interspace. The remainder of the vertebral bodies and interspaces were normal and showed no evidence for fracture, dislocation or significant arthritic change. (Tr. 109).
On November 30, 1995, Plaintiff was admitted to the Barnes St. Peters Hospital in St. Peters, Missouri following a motor vehicle accident. She complained of pain to the top of her head, neck, left hip area and low back. Physical examination revealed a tender left hip with increased pain upon flexion, and back pain in the low lumbar area with spasm, but the pain was non-radicular. (Tr. 100). X-rays of Plaintiff's left hip were normal. There was no evidence of fracture or dislocation and the visualized soft tissues were unremarkable. (Tr. 102). X-rays of Plaintiff's abdomen were normal. (Tr. 103). X-rays of her skull showed everything to be normal in size and intact. (Tr. 104). X-rays of her lumbar spine revealed the presence of five functioning lumbar vertebral bodies. The vertebral bodies were normally aligned and the intervertebral spaces were of adequate height. There was no sign of fracture, dislocation or bone or joint abnormality. The soft tissues were unremarkable. (Tr. 105). Likewise, x-rays of Plaintiff's cervical spine were normal. There was normal alignment of the seven cervical segments. There was no evidence of fracture, dislocation, or bone or joint abnormality. The soft tissues space was within normal limits. (Tr. 106-107).
On January 30, 1996, Martin Glazer, M.D., filled out a report for the Office of Disability Determinations. He reported that Plaintiff's gait was normal, she had no neurological abnormality, and she had no physical abnormalities. He did note that she suffered from anxiety reaction. (Tr. 134-135).
On February 12, 1996, Jaime O. Inawat, M.D. wrote a letter to the Office of Disability Determinations in which he stated the following:
Ms. Eiting was first seen in our office on November 8, 1995. She presented with a history of chronic low back pain allegedly due to spina bifida diagnosed when she was 17-years-old. She had an MRI done a year ago and was told she has a bulging disc. At that time she had had 2 episodes of severe low back pain with motor weakness and numbness. She *1015 was given the option of having surgery at Barnes but only if she wanted to. She decided to hold off on the surgery and since that time she had daily back pain but was able to tolerate it. She was given a lifting limit of 10 lbs with no repetitive bending. Ms. Eiting was diagnosed with chronic low back pain, given medications, and told to follow up on an as needed basis.
Ms. Eiting was last seen in our office on December 5, 1995. She was involved in a motor vehicle accident on November 30, 1995. She was seen in the Emergency Room at Barnes St. Peters Hospital. X-Rays were done and all were negative. She was complaining of shoulder pains, neck pain, and headaches.
On physical examination, her neck and shoulder had full ROM with pain on AROM. Her supraspinatus and trapezius muscles had spasms and tenderness and were warm to the touch. Cranial nerves 2-12 were intact. She had no motor or sensory deficits.
She was diagnosed to [sic] multiple muscle strain of the neck and shoulders. She was advised to continue medications, to ambulate every hour, alternate hot and cold compresses, and to follow-up in our office in 4 weeks.
(Tr. 123).

IV.

DETERMINATION OF THE ALJ
After considering the evidence of record, the ALJ concluded that Plaintiff was not under a "disability," as that term is defined in the Social Security Act, at any time through the date of the decision. (Tr. 21). Judge Mills found that Plaintiff had not engaged in substantial gainful activity since December 1, 1995. (Tr. 20).
The ALJ assessed the medical records and set forth Plaintiff's medical history. (Tr. 14-21). He determined that the medical evidence established that Plaintiff had spina bifida, back pain and arthritis. However, she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20).
The ALJ next determined whether Plaintiff could perform her past relevant work and, if not, whether there was other work she could perform. In making this determination, the ALJ assessed Plaintiff's residual functional capacity. The medical evidence and Plaintiff's subjective complaints were considered in determining her residual functional capacity.
The ALJ found that Plaintiff's testimony, insofar as it related to disabling and debilitating subjective complaints, was not credible and therefore not entitled to significant weight and consideration. Considering Plaintiff's allegations pursuant to Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir.1984), the ALJ listed the following factors which detracted from Plaintiff's credibility: (1) the objective medical evidence does not support Plaintiff's complaints; (2) Plaintiff has a poor prior work record; (3) Plaintiff appears motivated to qualify for disability; (4) Plaintiff's daily activities are not indicative of a disabling impairment; (5) inconsistencies exist between Plaintiff's testimony and the medical records; (6) Plaintiff was inconsistent within her own testimony; (7) Plaintiff's efforts to find relief for her pain increased only after she filed her claim; and (8) Plaintiff takes no strong medication for her pain. For all of these reasons, the ALJ concluded that Plaintiff was not a credible witness and was exaggerating her complaints in an attempt to qualify for benefits.
The ALJ found that Plaintiff had the residual functional capacity to perform the exertional demands of at least sedentary work as that term is defined in the Regulations. He found she was capable of lifting and carrying ten pounds, she could sit six hours during an eight hour day with normal breaks, she could stand and/or walk occasionally, and her ability to push and/or pull was restricted only by the weight limit described above. The ALJ also noted that *1016 there were no non-exertional limitations. (Tr. 20). Based on this residual functional capacity, the ALJ found that Plaintiff was unable to perform her past relevant work as a maintenance worker or as a waitress. (Tr. 20).
Based on the finding that Plaintiff could not do her past relevant work, the ALJ shifted the burden to the Commissioner to prove that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. To meet this burden, the ALJ considered the Medical-Vocational Guidelines. The ALJ found that Plaintiff was a "younger individual" at age 31, she had the equivalent of a high school education, and had no transferable skills. However, because of her exertional capacity, age and education, the issue of transferability of work skills was not material. (Tr. 20-21). Based on these findings, the ALJ noted that Section 416.969 of Regulations No. 16 and Rule 201.27, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, directed a conclusion that Plaintiff was not disabled. Thus, the ALJ concluded, Plaintiff was not eligible for supplemental security income under Sections 1602 and 1614(a)(3)(A) of the Social Security Act. (Tr. 21).

V.

LEGAL STANDARDS
Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. First, the claimant cannot be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities...." Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d) and Part 404, Subpart P, Appendix 1. If the claimant meets this requirement, then the claimant is per se disabled. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(f), 416.1520(f). If claimant meets these standards, the ALJ will find the claimant to be disabled.
The ALJ's decision is conclusive upon this Court if it is supported by "substantial evidence." Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir.1992); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir.1991). It is not the job of the Court to reweigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir.1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir.1992). Instead, the Court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Naber v. Shalala, 22 F.3d 186, 188 (8th Cir.1994); Onstead, 962 F.2d at 804. Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).
Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir.1984). In Bland v. Bowen, 861 F.2d 533 (8th Cir.1988), the Eighth Circuit Court of Appeals held:
[t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within *1017 which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.
Id. at 535. See also Metcalf v. Heckler, 800 F.2d 793, 794 (8th Cir.1986); Clark v. Heckler, 733 F.2d at 68. Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion. Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir.1991); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989).
To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:
(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.
Brand v. Secretary of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir.1980); Cruse v. Bowen, 867 F.2d at 1185.
The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir.1993); Roach v. Sullivan, 758 F.Supp. 1301, 1306 (E.D.Mo.1991).
"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). When evaluating evidence of pain, the ALJ must consider:
(1) the claimant's daily activities;
(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
(3) any precipitating or aggravating factors;
(4) the dosage, effectiveness and side effects of any medication; and
(5) the claimant's functional restrictions.
Baker v. Secretary of Health & Human Services, 955 F.2d 552, 555 (8th Cir.1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse v. Bowen, 867 F.2d 1183 (8th Cir.1989).
The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir.1992); Ricketts v. Secretary of Health & Human Services, 902 F.2d 661, 664 (8th Cir.1990); Jeffery v. Secretary of Health & Human Services, 849 F.2d 1129, 1132 (8th Cir.1988). It is not enough that the record contains inconsistencies; the *1018 ALJ must specifically demonstrate that he considered all of the evidence. Id.; Butler v. Secretary of Health & Human Services, 850 F.2d 425, 426 (8th Cir.1988). Although credibility determinations are in the first instance for the ALJ and not the court, the ALJ's credibility assessment must be based upon substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir.1988), Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir.1985).
When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints of pain under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987).
Where the ALJ holds that the plaintiff cannot return to her past relevant work, the burden shifts to the Commissioner to show other work that the plaintiff could perform in the national economy. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983). This is a two-part burden. First, the Commissioner must prove that the plaintiff has the residual functional capacity to perform other kinds of work. Residual functional capacity is defined as what claimant can do despite her limitations (20 C.F.R. § 404.1545(a) (1983)), and includes an assessment of physical abilities and mental and other impairments. (20 C.F.R. § 404.1545(b), (c), (d) (1983)). The Commissioner has to prove this by substantial evidence. Warner, 722 F.2d at 431. Second, once the plaintiff's capabilities are established, the Commissioner has the burden to demonstrate that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Id.
To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 176; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir.1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir.1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir.1989).

VI.

DISCUSSION
The issue before the Court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir.1992). Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. Jones v. Chater, 86 F.3d 823, 826 (8th Cir.1996). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.1992). Thus, even if there is substantial evidence which would support a decision opposite to that of the Commissioner, the Court must affirm his decision as long as there is substantial evidence in favor of his position. Jones, 86 F.3d at 826.
Plaintiff states that substantial evidence does not support the ALJ's determination for the following reasons:
1. Plaintiff's severe impairment prevents her from doing past relevant work and she does not have residual functional capacity, considering her age, education and past work experience, to do other work;
2. The ALJ's decision is based on irrelevant information, to-wit: Plaintiff's ability to care for her family; and

*1019 3. The ALJ improperly relied upon the Medical-Vocational Guidelines to reach the conclusion that Plaintiff was able to engage in sedentary work and that such work was available.
See Plaintiff's Motion for Summary Judgment, pp. 1-2. Upon reviewing the administrative record as a whole, the undersigned finds that the decision of the ALJ in the instant cause of action is supported by substantial evidence.

A. OBJECTIVE MEDICAL EVIDENCE
The ALJ's decision is supported by the objective medical evidence. While there is no doubt that Plaintiff suffers from some physical limitations as a result of her spina bifida, back pain and arthritis, the objective medical evidence does not suggest that Plaintiff's impairments or a combination of the impairments are significant enough to cause permanent disability precluding the performance of any substantial gainful activity.
Plaintiff's August 1994 cervical spine examination and x-ray were negative. Her December 1994 back examination was normal except for minimal degenerative changes in her facet joints. Her May 1995 lumbar spine x-ray was normal except for mild narrowing of the L5-S1 interspace. In November 1995, her hip, lumbar and cervical spine x-rays were normal. The lumbar vertebral bodies were normally aligned and the intervertebral spaces were of adequate height. Her seven cervical segments were normally aligned and the soft tissue spaces were within normal limits. In January 1996, Dr. Glazer reported that Plaintiff's gait was normal, she had no neurological abnormality and she had no physical abnormalities. In February 1996, Dr. Inawat reported that when he examined Plaintiff in December 1995, she had full range of neck and shoulder motion, muscle spasms and no motor or sensory deficits. Dr. Inawat diagnosed Plaintiff with multiple muscle strain in the neck and shoulders. Dr. Inawat recommended Plaintiff continue her medication, ambulate every hour, and alternate hot and cold compresses. The doctor did not recommend any therapy, x-rays, imaging, surgery or new pain medication.
Clearly, the objective medical evidence does not support a finding that Plaintiff's impairments are so disabling to the extent that she can perform no work at all. Indeed, the objective medical evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform a full range of sedentary work.

B. SUBJECTIVE COMPLAINTS OF PAIN
The issue is not whether Plaintiff experiences pain, but whether her subjective complaints are credible to the extent that they are disabling. Pickner v. Sullivan, 985 F.2d 401, 404 (8th Cir.1993). In determining that Plaintiff's subjective complaints were not credible, the ALJ properly considered Plaintiff's subjective complaints of a disabling impairment pursuant to the guidelines set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). The ALJ expressly discredited Plaintiff's testimony and gave good reasons for doing so. Judge Mills identified the following factors, all of which are supported by the record, which detract from the credibility of Plaintiff's subjective complaints of a disabling impairment.
First, the ALJ found that the objective medical evidence on the record as a whole, as just discussed, did not support a finding of disability. A lack of objective medical evidence detracts from Plaintiff's subjective complaints. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir.1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. Russell *1020 v. Sullivan, 950 F.2d 542, 545 (8th Cir.1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir.1987).
Second, the ALJ noted that Plaintiff had a poor prior work record which detracted from her credibility. Specifically, the ALJ noted that Plaintiff worked only six years and $2,900 was the most she ever earned in one year. Since 1987, Plaintiff has not worked at all despite the fact that she claims she did not become disabled until 1988. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir.1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir.1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir.1996), McClees v. Shalala, 2 F.3d 301, 303 (8th Cir.1993).
Third, the ALJ noted that Plaintiff appears motivated to qualify for disability benefits. He pointed out that Plaintiff's current support comes from Aid to Dependent Children and food stamps and that her family has helped support her but that she "needs the money and insurance [her] benefits would provide" and that "[she] needs the financial support now." Also, her former step-father stated that she needs financial help. The ALJ found that this suggests that Plaintiff is motivated to qualify for disability benefits, thus lessening the credibility of her allegations. An ALJ may discount a claimant's subjective complaints for, among other reasons, that she appears to be motivated to qualify for disability benefits. Dodd v. Sullivan, 963 F.2d 171, 172 (8th Cir.1992).
Fourth, Plaintiff's daily activities are not indicative of a disabling impairment. The ALJ noted that she gets her children up and ready for school, waters and feeds the dogs, does the housework, watches television, reads, crochets, prepares meals, does laundry, washes dishes, cleans the bathrooms, visits with her mother and sister, and grocery shops once a week with her mother and sister. The ALJ concluded that these activities are consistent with those of a mother having school-age children at home but without much money for recreation. Moreover, Plaintiff's statements did not seem to show her activities to be particularly restricted by the severe symptomatology she alleged. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with Plaintiff's subjective complaints of a disabling impairment. Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir.1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir.1987). See also Onstead v. Sullivan, 962 F.2d 803, 805 (8th Cir. 1992); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir.1987).
Fifth, the ALJ found that inconsistencies existed between Plaintiff's testimony and the medical records. For example, the ALJ noted that Plaintiff claims she walks with a limp. However, Dr. Glazer described her gait as normal and Dr. Inawat did so as well. Moreover, the ALJ noted that Plaintiff walked out at the end of each visit to Barnes St. Peters Hospital and did not avail herself of a wheelchair. The ALJ found that such contradictory statements served to cast doubt on her credibility. If inconsistencies exist in the record, the ALJ may disbelieve the claimant's subjective testimony of disabling impairments. Aborn v. Sullivan, 959 F.2d 111, 112 (8th Cir.1992); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991); Dawson v. Bowen, 815 F.2d 1222, 1226 (8th Cir.1987).
Sixth, the ALJ found that inconsistencies existed within Plaintiff's own testimony. For example, he noted that she stated she could only stand for five minutes at a time and that if she walks too long, her legs lose sensation and she falls. However, she reported on her disability report *1021 that she shops once a week for an hour at a time, indicating that she can walk more than five minutes. Again, if inconsistencies exist in the record, the ALJ may disbelieve the claimant's subjective testimony of disabling impairments. Aborn v. Sullivan, 959 F.2d 111, 112 (8th Cir.1992); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991); Dawson v. Bowen, 815 F.2d 1222, 1226 (8th Cir.1987).
Seventh, the ALJ noted that the frequency of Plaintiff's efforts to find relief for her pain increased significantly after she filed her claim. Indeed, although Plaintiff claims an onset date of June 1, 1988, the record shows that she did not begin seeking medical treatment until August 1994, when she went to the emergency room for neck pain. Moreover, although Plaintiff testified that she went to the doctor once a month for her back problems, there is no evidence in the record to support this statement. Plaintiff's limited treatment prior to filing her application is inconsistent with claims of a disabling impairment. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir.1989); Johnson v. Bowen, 866 F.2d 274 (8th Cir.1989).
Eighth, the ALJ found that Plaintiff takes no strong medication for her pain. He noted that the record shows episodic treatment with a muscle relaxant, an anti-inflammatory and a mild pain reliever. The ALJ concluded that the lack of strong pain medication is inconsistent with her allegation of such constant disabling pain. The ALJ properly concluded that Plaintiff's history of pain medication was not indicative of disabling pain. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir.1994). See also Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir.1987) (treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir.1989) (minimal consumption of pain medication reveals lack of disabling pain); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir.1988) (failure to seek aggressive treatment and limited use of prescription medications not suggestive of disabling pain).
For the above eight reasons, the ALJ found Plaintiff's subjective complaints to be not entirely credible. The ALJ did not find that Plaintiff suffered no pain. Instead, the ALJ found that Plaintiff's impairments were not as severe as she alleged. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir.1991). The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir.1989), Sykes v. Bowen, 854 F.2d 284, 287 (8th Cir.1988). The Court finds the reasons offered by the ALJ in support of his credibility determination to be based on substantial evidence. Therefore, the findings of the ALJ must be affirmed.

C. MEDICAL-VOCATIONAL GUIDELINES
Once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir.1992). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical Vocational Guidelines. Id. If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. Id.
Pain is generally considered a non-exertional impairment because it can affect concentration, posture, reaching, sitting/standing duration, as well as lifting. However, the fact that a claimant suffers from a non-exertional impairment does not immediately preclude utilization of the *1022 Guidelines. Before reaching the conclusion that the Guidelines will not be applied because the claimant alleges non-exertional limitations, those non-exertional limitations must be severe enough to significantly limit a claimant's ability to do a full range of gainful employment at the designated residual functional capacity level. Nelson v. Secretary of Health & Human Services, 770 F.2d 682, 685 (7th Cir.1985); Chitwood v. Bowen, 788 F.2d 1376, 1378 (8th Cir.1986).
Plaintiff claims that her pain is a non-exertional factor which renders the ALJ's use of the Guidelines improper. However, as discussed above, substantial evidence supports that ALJ's decision that Plaintiff's alleged pain was not severe enough to significantly limit Plaintiff's ability to do a full range of sedentary work. Thus, Plaintiff's allegations of pain did not take the ALJ's analysis of Plaintiff's case outside the Guidelines. Chitwood, 788 F.2d at 1378.
The ALJ applied § 416.969 of Regulations No. 16 and Rules 201.27 and 201.00, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, to Plaintiff's case. Table No. 1 applies to those individuals whom the Commissioner determines to have a residual functional capacity limited to sedentary work. Sedentary work is defined as that work which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools with walking and standing required only occasionally. Substantial evidence on the record as a whole supports the ALJ's conclusion that Plaintiff can perform sedentary work, so Table No. 1 was properly applied.
With respect to Table No. 1, the ALJ determined that Plaintiff was a "younger individual." He further found that Plaintiff had the equivalent of a high school education. This placed Plaintiff within Rule 201.27. The next step was to determine whether Plaintiff's previous skilled or semiskilled work experience consisted of skills that were transferable or not. The ALJ did not make a specific determination on this issue because he did not have to. If Plaintiff's skills were transferable then the Guidelines determined that Plaintiff was not disabled. If Plaintiff's skills were not transferable, the Guidelines still determined that Plaintiff was not disabled. Substantial evidence supported each of the ALJ's findings with respect to Table No. 1.
Because substantial evidence supports the ALJ's decision that Plaintiff did not suffer from a disabling non-exertional impairment, the ALJ properly relied upon the Medical-Vocational Guidelines to conclude that Plaintiff was not disabled.

VII.

CONCLUSION
The Court finds that the Commissioner's decision is supported by substantial evidence contained in the record as a whole. Thus, the Commissioner's decision should be affirmed.
Accordingly,
IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED. [18]
IT IS FURTHER ORDERED that Defendant's motion for summary judgment is GRANTED. [21]
IT IS FINALLY ORDERED that a separate judgment shall be entered in favor of Defendant and against Plaintiff in the instant cause of action.

JUDGMENT
In accordance with the Memorandum and Order entered this same date,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Commissioner's decision is affirmed and that Defendant shall have judgment against Plaintiff in the instant cause of action.