**Ordean L. NELSON, Plaintiff–Appellant,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 90–5582.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1991.

Decided Sept. 3, 1991.

Neal A. McEwen, Thief River Falls, Minn., for plaintiff-appellant.

Gary A. Sultz, Chicago, Ill., for defendant-appellee.

Before ARNOLD, RONEY *, and WOLLMAN, Circuit Judges.

PER CURIAM:

In this Social Security disability case, the claimant Ordean L. Nelson challenges the Secretary of Health and Human Services' findings that his medical condition has improved and that there are a significant number of jobs in the national economy which he can perform. The Secretary's decision is supported by substantial evidence on the record as a whole, and thus we affirm the district court's grant of summary judgment for the Government.

Claimant's application for disability benefits on September 25, 1980, asserted that a back injury suffered in a workplace acci-

dent had become so severe that he was no longer able to engage in gainful activity. Although this application was initially denied, plaintiff requested a hearing at which an Administrative Law Judge (ALJ) determined that claimant was in fact disabled and was therefore entitled to benefits as of June 15, 1980.

On February 18, 1983, Nelson received notice from the Social Security Administration (SSA) that his benefits would cease on April 30, 1983, due to an improvement in his condition. After a series of internal agency review proceedings, the SSA Appeals Council ultimately confirmed the Secretary's initial decision to discontinue benefits.

 The initial critical question in a case such as this is whether the claimant's physical condition has improved since the prior award of disability benefits. The claimant in a disability benefits case has a "continuing burden" to demonstrate that he is disabled, *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and no inference is to be drawn from the fact that the individual has previously been granted benefits. 42 U.S.C. § 423(f). Once the claimant meets this initial responsibility, however, the burden shifts to the Secretary to demonstrate that the claimant is not disabled. *Lewis v. Heckler,* 808 F.2d 1293, 1297 (8th Cir.1987). If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work. 20 C.F.R. § 404.1594(b)(2)–(5).

Although this is a close case, a careful review of the record reveals enough evidence of medical improvement to meet the substantial evidence on the record as a whole standard of review. *Richardson v. Perales* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Medical im-

* The HONORABLE PAUL H. RONEY, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

provement is defined as a decrease in the medical severity of the impairments present at the time of the most recent favorable medical condition. 20 C.F.R. §§ 404.1594(b)(1). The decision concerning whether or not an individual's condition has improved is primarily a factual inquiry, which so often depends upon the credibility to be given to the various witnesses, a responsibility particularly given to the trier of fact. *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987). As a result, if substantial evidence supports the Secretary's position then it must be upheld. *See Steele v. Sullivan,* 911 F.2d 115, 116 (8th Cir.1990) (Secretary has "zone of choice" within which to operate).

In 1981, shortly before the hearing when Nelson was awarded disability benefits primarily due to severe back pain occasioned by degenerative disc disease, he had undergone surgery to repair some of the damage and alleviate the pain. The ALJ hearing the case specifically noted that the effects of the surgery prevented plaintiff from engaging in work at the time but that after an undetermined period of convalescence, he would be able to return to some sort of gainful activity. At that time, examinations demonstrated that claimant had severe osteoarthritis of the lumbar spine and disc space narrowing resulting in severe pain, substantial motor loss, and an inability to stoop, bend, twist, or sit for any length of time. Claimant also had reduced strength in his right hand and arm and a prosthesis in the left eye.

At the hearing under review here, evidence was taken from four witnesses: the claimant himself, Dr. John H. Beaumier (Nelson's treating physician), Dr. Roger Davis (the attending physician during a 10–day rehabilitation program), and Dr. Daniel Schmelka, (the Secretary's examining physician). The Secretary bases his decision primarily on the reports of Dr. Davis and Dr. Schmelka.

Dr. Schmelka, the physician assigned to the case by the Secretary, examined claimant in February 1983. He indicated that although claimant's injuries prevented him from returning to his former job, there were tasks claimant could perform which would allow him to obtain some sort of sedentary work. His tests found that the motor weakness in claimant's back and left leg observed in 1981 had dissipated by the time of his examination in 1983. In addition, the grip strength difficulties in the right hand and arm noted by the ALJ were no longer detectable.

Dr. Davis monitored claimant's treatment during a week long rehabilitation program in March 1983. His tests also indicated that claimant was no longer suffering from motor weakness. He suggested that claimant could return to work with certain specified limitations on the amounts which he could lift and the amount of time he could stand during the day. Upon Nelson's release from the program, Dr. Davis reported that claimant stated that his pain had been completely alleviated. Although claimant maintains that Dr. Davis' favorable analysis was the result of a personality conflict with the claimant, this is the kind of argument as to credibility and weight of the evidence that must be settled by the trier of fact. *Johnson v. Heckler,* 744 F.2d 1333, 1338 (8th Cir.1984). There is nothing in the record that compels a decision that Dr. Davis' findings should not be credited.

▆▆▆▆ The reports of claimant's own treating physician are not inconsistent with these views. Dr. Beaumier suggested that although claimant was restricted in what he could do, he was not prevented from doing certain "fine work." His statements as to the limitations on claimant's ability to lift or carry objects, on the length of time claimant could sit, and the amount of bending he could do were largely consistent with the diagnoses of the other physicians. Although Dr. Beaumier did state that in his opinion claimant could not be gainfully employed, such statements are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Secretary. Medical testimony is relevant in determining precisely what claimant's physical impediments are, but it is not conclusive as to the ultimate question concerning whether the claimant's

injuries are so severe that he is prevented from doing productive work. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984) (physician's testimony on medical condition impacts only one aspect of disability equation); *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir.1985) (physician's testimony that claimant is disabled is not a medical opinion). While we recognize that the treating physician is entitled to particular deference, his statements as to the ultimate issue of disability are not controlling. In all respects, other than his conclusion on plaintiff's ability to work, Dr. Beaumier's testimony was consistent with the diagnoses of the other physicians.

■ Claimant also testified about his condition and stated that the pain he experienced had increased markedly during the years between 1981 and 1983. Despite these contentions, it appears from the record as a whole that the ALJ could properly decide that Nelson's pain improved during the years in question. While an individual's subjective complaints cannot simply be discounted, they must be evaluated in light of the evidence that may be inconsistent with claimant's testimony. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984), *cert. granted and judgment vacated on other grounds* by *Bowen v. Polaski*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1988) (listing factors for examining subjective claims).

During the period between 1981 and 1983, claimant sought medical attention on a regular basis. After 1983 his visits to Dr. Beaumier's office slowed to approximately once a year. Dr. Beaumier indicated that claimant suffered "discomfort", not severe immobilizing pain. Despite claimant's testimony concerning his nonexertional pain, his physician did not prescribe any pain medication stronger than aspirin. These factors, combined with claimant's moderate daily schedule of activities, suggest an ability to engage in some sort of light work. Although claimant suffers some pain from his injuries, one of the most difficult questions in medical-legal cases is the extent that a person's pain is disabling. This record contains substantial evidence to support the decision that both claimant's pain and physical impairments did in fact improve between 1981 and 1983.

■ Once medical improvement has been established, the question then is whether the claimant can obtain gainful employment in the economy. 20 C.F.R. § 404.1594(f)(7)–(8). The Secretary acknowledges that claimant can no longer perform the type of work he engaged in prior to the injury. As a result, the Secretary has the burden of identifying other jobs which claimant can perform taking into consideration his current impairments. *Kirksey v. Heckler*, 808 F.2d 690, 692–94 (8th Cir.1987). To meet this burden, the Secretary called on a vocational expert, Dr. David C. Perry, who found that based on Nelson's residual functional capacity, he could serve as either a security guard/night watchman, an auto rental clerk, or a recreational facility attendant. Dr. Perry stated that these jobs were available in significant numbers in both the national and local economies. Although cross-examination by claimant's counsel raised some questions as to claimant's ability to perform some of these jobs, it did not establish that the vocational expert's testimony was unreliable. Based on this record, it appears as though substantial evidence supports the Secretary's decision that despite his continuing disabilities, a significant number of jobs involving light work are available to claimant.

In this case the same Administrative Law Judge, Conrad A. Ziegler, conducted the hearing in 1981, which resulted in an award of disability benefits, and the initial hearing in 1983, which upheld the determination that Nelson's disability had ceased. Thereafter, ALJ Zeigler held another hearing in 1987 after which he again recommended a decision concluding that Nelson's disability ceased in February 1983. This is particularly helpful in a case of this kind because, when the same hearing officer who found a disability subsequently determines that it no longer exists, the court can have confidence that the finding is not sim-

ply the result of different triers of fact evaluating the same evidence differently.

AFFIRMED.